UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**LIVONIA VOLKSWAGEN, INC.,**

        **Plaintiff,**

                                            **Case No.    06-13619**

**v.**                                            **HONORABLE DENISE PAGE HOOD**


**UNIVERSAL UNDERWRITERS GROUP,**

        **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant Universal Underwriters Group's Motion for Summary Judgment, filed on May 7, 2007. [**Docket No. 15**]. Plaintiff, Livonia Volkswagen, Inc., filed its Response on June 5, 2007.

On July 2, 2006, Plaintiff filed the instant action against Defendant in the Wayne County Circuit Court, Detroit, Michigan. On August 14, 2006, Defendant removed this matter pursuant to 28 U.S.C. §§ 1441 and 1446. On September 29, 2006, Plaintiff filed its First Amended Complaint alleging the following claims: Breach of Contract, Count I; Breach of Implied Contract, Count II; Bad Faith, Count III; and Claim for Interest Penalty pursuant to MICH. COMP. LAWS § 500.2006, *et seq.*, or Michigan's Uniform Trade Practices Act.

**II.    STATEMENT OF FACTS**

1

In 2002, Plaintiff and Defendant entered into a contract for business insurance coverage, covering the period of November 1, 2002 through November 1, 2003. The policy provided for coverage of $500,000.00 for employee dishonesty with a deducible of $1,000.

On or about December 1, 2002, Plaintiff hired William Steinmeitz for the position of General Manager/General Sales Manager for its Livonia Dealership. In May of 2003, the President of Livonia Volkswagen, Jack Auffenberg, became concerned about the financial position of the dealership and suspected Steinmeitz had engaged in financial misconduct. Auffenberg hired an internal auditor, Lilan Davanti, who confirmed his suspicions. The audit revealed that during Steinmeitz' employment, he engaged in dishonest conduct by misstating dealership profits to increase his bonus compensation, making unauthorized loans to employees, misappropriating dealership funds for personal expenses, and failing to turn over cash deposits for vehicles. Plaintiff asserts that while it knew of Steinmeitz' wrongdoing at this time, it was not aware of the extent of losses it had suffered as a result of Steinmeitz' conduct. Plaintiff discharged Steinmeitz as a result of his dishonest conduct in June of 2003.

In August, Auffenberg contacted his attorney, Patricia Streeter, in order to pursue legal action against Steinmeitz. On September 5, 2003, Plaintiff commenced a civil action against Steinmeitz in Washtenaw County Circuit Court (WCCC) asserting claims of fraud, misrepresentation, conversion and embezzlement. Steinmeitz countersued.

Thereafter, Auffenberg placed Streeter in charge of recovering compensation for Plaintiff's losses due to Steinmeitz' conduct under the employee dishonesty provision of the insurance contract. A claim for employee dishonesty coverage was made to Plaintiff's insurance agent, Kapnick Insurance and on December 3, 2003, Kapnick forwarded the claim submission to Defendant.

Kapnick also sent information regarding the civil lawsuit in Washtenaw County Circuit Court and the identity of Plaintiff's counsel. This initiates a lengthy two-year back and forth exchange between Streeter and Defendant regarding the processing of Plaintiff's claim.

On December 11, 2003, Lawrence Kriss, a fidelity/surety supervisor for Defendant wrote to Streeter in an effort "to assist in presenting [Plaintiff's] 'Crime' claim consistent with provisions of [Plaintiff's] insurance policy." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E) Plaintiff asserts that this letter only called attention to the provisions of the policy regarding "Your Duties After Loss," and nothing about either the implications of the subrogation provision,[1] nor the one-year contractual limitations period. However, a review of the letter reveals that Streeter was also encouraged to read the entire insurance policy carefully. (*Id.*) Enclosed with this letter was a blank Proof of Loss form. Streeter was advised to attach material documents supporting the claim. Lastly, the letter advised that "[t]he period within which a Proof of Loss may be filed is limited to a four-month period after "Discovery" of the loss." (*Id.*)

On December 15, 2003, Streeter sent documents supporting Plaintiff's claim to Defendant; a copy of Plaintiff's Complaint in the WCCC case and an initial damage assessment of the losses incurred from Steinmeitz' dishonesty. The Proof of Loss form was not included with these documents. On February 9, 2004, Kriss responded to Streeter's submission letter and specifically

---

[1] The subject policy contained a subrogation provision, which states:

> SUBROGATION – YOU and each INSURED must do all in their power to preserve their rights to recover from others. Once WE have made a payment under this policy, whether or not YOU or an INSURED are fully compensated, YOUR or an INSURED'S rights to recover from others become OUR rights.

(Def.'s Mot. for Summ. J., Exh. 1, Insurance Policy No. 231699A)

3

requested that she provide the Proof of Loss form and additional documentation in order to assist him in further handling the claim. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. G)

On April 12, 2004, when Defendant had not received the Proof of Loss form nor additional supporting documentation that was requested in his February 9, 2004 letter, Kriss again informed Streeter via letter that he needed this in order to continue processing the claim. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. H) This letter also stated that:

> As you know, by the terms of the policy, Livonia Volkswagen is required to submit a sworn Proof of Loss fully documenting the claim within four months of discovery of the loss. Because more than four months have elapsed since discovery, Universal Underwriters Insurance Company will consider a Proof of Loss now filed under a full reservation of rights and defenses, including but not limited to those rights and defenses arising due to the late filing of the Proof.
>
> \*      \*      \*
>
> Please note that this is not a denial of your claim.

(*Id.*)

On April 20, 2004, Streeter submitted the additional documentation and Proof of Loss form and a revised loss amount of $760,558.29. Streeter noted in this letter her anticipation that she would need to provide additional information. As anticipated, on April 30, 2004, Kriss sent correspondence to Streeter requesting additional documentation supporting various elements of Plaintiff's claim. The correspondence noted that Defendant "continues to reserve all rights and defenses under the policy, at law, and in equity, including but not limited to those arising due the late filing of the Proof of Loss.[2] (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. J)

---

[2] Kriss sent a letter to Steinmeitz on April 30, 2004 requesting that he contact Defendant immediately as Defendant needed to make a decision as to liability, if any, it had to Plaintiff. The letter warned Steinmeitz that Defendant would pursue reimbursement from him for payment of Plaintiff's claim, "utilizing all legal and equitable means available." (Pl.'s Resp. to Def.'s

In August of 2004, the parties were required to submit to case evaluation in the WCCC case. The evaluation panel awarded Plaintiff $9,000.00. According to Plaintiff, this amount reflected what it could realistically recover from Steinmeitz, and not the actual amount of Plaintiff's losses. Plaintiff accepted the award.

On October 6, 2004, Streeter contacted Scott McDonald of Kapnick Insurance and informed him that the underlying litigation had been resolved for a total amount of $9,000 against Steinmeitz. She also informed him of her belief that the total loss amount should be revised to less than $300,000.00, after she discussed this with accountant Ken Zink regarding the documentation of the claim.

The next day, Streeter contacted Kriss via the telephone and indicated to him that she would be sending additional documents. According to Plaintiff, Streeter inquired as to the timeliness of the claim. This is evidenced by Kriss' notation on his October 7, 2007 log that "I explained that there is no time limit to extend, but UU will consider docs submitted and will look to see if any prej[udice] has occurred." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. Y)

On October 28, 2004, Streeter sent another letter to Kriss indicating that she was currently working with Plaintiff in order to complete the supporting documentation and requested additional time to provide these documents. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. M) In response, on November 15, 2004, Kriss sent a letter to Streeter which stated that

> As we discussed previously, the time limit period in which to file a fully documented Proof of Loss expired long ago, so there is no time limit to extend. However, Universal Underwriters will consider any documentation that is submitted . . . .

Mot. for Summ. J., Ex. K)

(Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. N)[3] On November 29, 2004, Streeter provided a Supplemental Proof of Loss, which revised Plaintiff's claimed loss to a total of $259,600.22. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. O) The following day Streeter faxed additional documentation supporting Plaintiff's claim. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. P)

Two and a half months later, on February 21, 2005, Kriss sent another letter to Streeter in response to her Supplemental Proof of Loss and requested further documentation on eight of the losses Plaintiff was claiming compensation for, and requested copies of the pleadings in the WCCC matter. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. Q) Streeter forwarded this request to Plaintiff.

On May 13, 2005, Defendant's Michigan regional office wrote to Auffenberg informing him that Defendant was denying coverage of the underlying counter-claim in the WCCC matter, which Steinmeitz brought against Plaintiff. The basis for the denial was that the summons was issued on November 13, 2003, which was outside of the coverage period because the policy was cancelled effective November 1, 2003. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. R)

On June 3, 2005, Kriss again wrote to Streeter. He informed Streeter that he would close the file if she did not send the additional information he had previously requested. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. S) Streeter provided supplemental documentation on June 20, 2005. On October 19, 2005, Streeter provided an updated loss amount totaling $227,079.24. On October 26, 2005, Kriss contacted her and stated that he was in the process of seeking legal advice regarding the applicability of coverage and that he needed to review all of the documents she had submitted. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. V)

---

[3] This letter also stated "Universal Underwriters continues to reserve all rights and defenses available under the policy, at law and in equity." (*Id.*)

On December 21, 2005, Kriss wrote to Streeter indicating that Plaintiff had breached the subrogation provision by accepting the case evaluation award of $9,000.00 in the WCCC matter. As such, Defendant was only going to offer coverage up to that amount. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. V) On May 3, 2006, Defendant issued a check in the amount of $8,000.00, or $9,000.00 minus Plaintiff's $1,000.00 deductible. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. W)

Defendant filed the instant motion for summary judgment arguing that all of Plaintiff's claims are barred by the contractual statute of limitations provision of the subject policy as Plaintiff did not commence this action within this limitations period. Defendant further claims that even if Plaintiff's claims are not time-barred, Plaintiff would not be entitled to relief as Plaintiff breached the subject policy by failing to timely file its Proof of Loss, as such Defendant was authorized under the subject policy to deny Plaintiff's claim. Defendant also argues that Plaintiff is precluded from asserting a claim under a theory of implied contract because there is an express contract between the parties. Additionally, Defendant argues that Plaintiff's bad faith claim fails because Michigan law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing. Lastly, Defendant asserts that Plaintiff cannot raise a claim pursuant to Michigan's Uniform Trade Practices Act, MICH. COMP. LAWS § 500.2006 *et seq.* because the claim between the parties was "reasonably in dispute," as such Plaintiff is not entitled to relief under the express provisions of the statute.

## III. APPLICABLE LAW & ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has

interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B. Contractual Statute of Limitations Provision

Defendant argues that all of Plaintiff's claims are barred by the one-year contractual statute

8

of limitations provision in the subject policy. The provision states:

> ACTIONS AGAINST US–No one may bring legal action against US for any reason, to recover under this policy, unless they have complied with all of its terms.
> 
> A legal action for LOSS to YOUR property must be brought within 12 months from the date YOU discover the LOSS, but no sooner than 90 days after YOU file a sworn proof of LOSS.

(Def.'s Mot. for Summ. J., Exh. 1, Insurance Policy No. 231699A, General Conditions, p. 6) The Michigan Supreme Court has held that contractual provisions limiting the time within which claimants may bring suit are enforceable, unless the provision violates law or public policy. *See Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005). "[A]bsent proof of estoppel, waiver, or another recognized contract defense, a contractually shortened limitations period is valid and enforceable." *West v. Farm Bureau General Ins. Co.*, 272 Mich. App. 58, 63 (2006) (citing *Rory*, 473 Mich. at 470-72).

The doctrine of equitable estoppel "is essentially a doctrine of waiver that extends the applicable period for filing a lawsuit by precluding the defendant from raising" the contractual limitations period as a defense. *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263, 270 (1997). The elements of equitable estoppel include: 1) a false representation or concealment of a material fact, 2) an expectation that the other party will rely on the misconduct, and 3) knowledge of the actual facts on the part of the representing or concealing party. *Id.* "Intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action" must be established for the doctrine to apply. *Id.* "Negotiations intended to forestall bringing an action have been considered an inducement sufficient to invoke the doctrine, however." *Id.* (citing *Friedberg v. Ins. Co. of North America*, 257 Mich. 291 (1932)).

Plaintiff argues that in the wake of *Rory*, the Insurance Commissioner of Michigan's Office

of Financial and Insurance Services has now prohibited insurance companies from using the one-year contractual limitations provision like the one used by Defendant in this case. *See* Michigan Office of Financial and Insurance Services Rule 500.2212. Rule 500.2212 states:

> R 500. 2212 Shortened limitation of action clause prohibited.
>
> Rule 2.    (1) A shortened limitation of action clause unreasonably reduces the risk purported to be assumed in the general coverage of the policy . . . (2) . . . an insurer shall not issue advertise, or deliver to any person in this state a policy, contract . . . that contains a shortened limitation of action clause.

Rule 500.2212. However, the rule states that it does not apply until "on and after the first day of the first month following the effective date of these rules," which is May 3, 2007. *Id.* Additionally, the rule states that "[t]his does not apply to a contract document in use before that date . . . ." *Id.* Although it appears that Michigan's public policy disfavors and in fact prohibits contractual limitations periods as the one at issue in the present matter, it is clear that the new rule does not apply to contracts already in use. As such, this Court is unable to hold that the limitations provision of the parties' contract is unenforceable under Rule 500.2212. The parties entered into the contract for insurance in 2002, covering the period of November 1, 2002 through November 1, 2003, which renders Rule 500.2212 inapplicable to the parties' agreement as it was already in use before June 1, 2007 when the rule states it becomes effective. *Id.*[4]

Next, Plaintiff asserts that by requiring the supplementation of documentation to evaluate

---

[4]This Court is, of course, bound by the Michigan Supreme Court's decision in *Rory*. It is unclear at this juncture what implications this new rule will have as it appears to supersede the Michigan Supreme Court's decision in *Rory*. *Rory* overruled a long standing rule in Michigan that an insurance policy must be tolled from the time the insured gives notice until the insurer formally denies liability. *See Tom Thomas Org., Inc. v. Reliance ins. Co.,* 396 Mich. 588, 597 (1976).

Plaintiff's claim, as well as the fact that throughout the parties' extensive communications over the claim Defendant never called Plaintiff's attention to the limitations provision, these actions constitute a waiver of the contractual limitations provision. Plaintiff further argues that since Defendant never denied coverage based upon this provision, that this constitutes a waiver of the limitations provision as a defense. Plaintiff does not provide this Court with any legal authority in support of this assertion.[5] Plaintiff's theory of waiver also rests upon Streeter's verbal inquiry to Kriss as to the timeliness of the claim on October 7, 2004. Kriss indicated that Defendant would continue investigating the claim and determine if Defendant had been prejudiced. Plaintiff argues since Defendant never denied coverage based upon the untimely filing of the Proof of Loss form, nor alleged that it was prejudiced by the untimeliness, Defendant has waived both the contractual limitations and Proof of Loss timing requirement provisions of the subject policy.

Plaintiff argues that based upon the above, there is a genuine issue of material fact whether Defendant waived the one year limitations provision**.** Plaintiff relies upon the cases of *Sweebe v. Sweebe*, 474 Mich 151 (2006) and *Fortherfill v. McKay Press*, 361 Mich. 666 (1960) for the proposition that whether or not Defendant waived its right to assert the contractual limitations provision is a question of fact for the jury. While these cases do stand for such a proposition, Defendant counters that Plaintiff cannot assert waiver or estoppel as it did not specifically allege any acts of Defendant that constitute a waiver in Plaintiff's Complaint, a necessary requirement for such a question of fact to reach the jury. *See Bromley v. Citizens Insurance Co.*, 113 Mich. App. 131, 136 (1982)(The court dismisses the plaintiff's assertion that the defendant should be estopped from

---

[5] Further, Plaintiff asserts that Defendant never denied the claim at all, it just limited the amount it would pay on Plaintiff's claim based upon the subrogation provision and Plaintiff's acceptance of the case evaluation award in the WCCC case.

raising a limitations defense because "[t]here is no allegation in the complaint that defendant intentionally misled plaintiff, a necessary prerequisite for application of equitable estoppel." *Id.*)

A review of Plaintiff's First Amended Complaint reveals that Plaintiff has not alleged that Defendant made a false representation or concealed any fact that caused Plaintiff to delay in filing its action within the one-year contractual limitations period. Additionally, the courts have rejected the argument by requiring Plaintiff to supplement its claim with additional information well beyond not only the four month proof of loss filing requirement, but also the one-year contractual limitations period, Defendant waived these limitation periods as defenses. *See Westfield Ins. Co. v. Appleton*, 132 Fed. Appx. 567, 574 (6th Cir. 2005)(Denying Plaintiff's argument that insurer's request for additional information should be a factor in determining whether a waiver occurred, notwithstanding the fact that the request was made shortly before the applicable proof of loss filing deadline. *Id.* at 573-74). Lastly, within the numerous correspondences sent to Streeter by Defendant's agent, Kriss, wherein he requested additional information, a full reservation of rights disclaimer was always included in the body of the letter. As such, Plaintiff's Complaint is untimely under the contractual limitations provision in the policy, and is DISMISSED with prejudice. Under no set of facts did Plaintiff timely file this action. Plaintiff can be presumed to have discovered its loss no later than September 5, 2003, the date on which it filed an action against Steinmeitz in the Washtenaw Circuit court. Plaintiff did not file this action until July 2, 2006, almost three years later.

### C. Breach of Contract

Defendant argues that even if this Court determines that the contractual limitations provision does not apply, Plaintiff's breach of contract claim nonetheless fails as a matter of law. Defendant asserts that Plaintiff breached the contract because it did not file a sworn Proof of Loss until April

20, 2004, well beyond the four month timing requirement for filing a sworn Proof of Loss under the Policy. Defendant also argues that Plaintiff breached the insurance contract by accepting the case evaluation award in the WCCC case, which impaired Defendant's subrogation rights against Plaintiff.[6]

First, the Court has already discussed and rejected any argument asserted by Plaintiff that Defendant waived the defense of Plaintiff's failure to file a proof of loss within the four month period required under the policy. *See Westfield*, 132 Fed. Appx. at 574. It also appears that Plaintiff did breach the subject policy by accepting the case evaluation award, as this precludes Defendant from obtaining any reimbursement from Steinmeitz beyond the $9,000 award. The Consent Judgment issued by the court for $9,000 memorializing the case evaluation award, stated that it constituted the "full and final settlement of this matter". *See In re Cook Estate*, 155 Mich. App. 604, 609 (1986). As such, Defendant's rights were impaired by Plaintiff's acceptance of the award. Plaintiff cites one case in support of its assertion that there is a genuine issues of material fact as to whether Plaintiff violated the subrogation provision. *See Stolaruk Corp. v. Nat. Ins. Co. of Omaha*, 206 Mich. App. 444 (1994). This case actually supports Defendant's argument that Plaintiff breached the subrogation provision because the *Stolaruk* plaintiff was found to be in breach of a similar subrogation provision when it entered into a consent judgment and a general release which destroyed the insurer's right of subrogation. As such, the Michigan Court of Appeals affirmed the trial court's grant of summary disposition. *Id.* at 449-50. The court held that "[t]he clear import of the clause - - namely, that the insured would do nothing to negatively affect the subrogation rights

---

[6] *See* section on contractual statute of limitations provision for Plaintiff's argument that Defendant waived the timing requirement for filing a sworn Proof of Loss.

of the insurer" was a condition precedent to recovery under the policy, having breached this condition, summary disposition was proper. *Id.*

### D. Breach of Implied Contract

Defendant is correct in its assertion that Plaintiff cannot state a claim for breach of an implied contract when there is an express contract governing the parties' conduct. "[A] contract cannot be implied when an express contract already addresses the pertinent subject matter." *Liggett Rest. Group, Inc. v. City of Pontiac*, 260 Mich. App. 127, 137-38 (2003); *See also Advanced Plastics Corp. v. White Consolidated Industries, Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993)("[A]lternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Id.*(citing *Campbell v. Troy*, 42 Mich. App. 534, 537)). Plaintiff appears to agree with this as it does not raise any arguments to refute Defendant's assertion in its Response to Defendant's Motion for Summary Judgment.

### E. Bad Faith

Defendant argues that Plaintiff's bad faith claim should be dismissed because Michigan courts do not recognize such a cause of action for wrongful denial by an insured of coverage under an insurance contract. Here again, Plaintiff does not appear to disagree with this as it does not raise any arguments in opposition to Defendant's assertion in its Response to Defendant's Motion for Summary Judgment. The Court agrees with Defendant that Michigan does not recognize an independent cause of action for bad faith separate and apart from a breach of contract claim. "Michigan recognizes no independent tort action for the alleged breach of a contract's implied covenant of good faith and fair dealing." *Chyrsler Int'l Corp. v. Cherokee Export Company*, 134 F. 3d 738, 745 (6th Cir. 1998) (citing *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194

(1991)).

### F. MICH. COMP. LAWS § 500.2006 *et seq.*

Defendant argues that Plaintiff cannot recover under Michigan's Uniform Trade Practices Act, MICH. COMP. LAWS § 500.2006, et seq. because failure to pay claims in a timely manner is not actionable if the claim is "reasonably in dispute" under the statute. See MICH. COMP. LAWS § 500.2006(4). Under the Act, "[a] private party may seek penalty interest . . . when an insurer fails to timely pay a claim." Griswold Properties, L.L.C. v. Lexington Ins. Co., 2007 Mich. App. LEXIS 1295, *3-4. The purpose of the Act "is to punish insurers who employ dilatory practices in settling meritorious claims []." *Id.* at *4.

Defendant asserts that it did not act unreasonably or in a dilatory manner in denying Plaintiff's claim. Plaintiff did not provide its final calculation as to the total amount of loss it suffered due to Steinmeitz' dishonest conduct until November of 2005. When Defendant then denied coverage on the claim beyond the amount of the case evaluation award in December 2005, this was not unreasonable delay in the processing of Plaintiff's claim. Defendant also argues that at the time Plaintiff submitted its final calculation, Plaintiff's claim was reasonably in dispute.

Plaintiff argues that the "reasonably in dispute" language only applies to third party tort claimants and not first party insureds. In support of this argument, Plaintiff cites the very recent Michigan Court of Appeals decision in *Griswold*, where the court agreed that the "reasonably in dispute" language applies only to third party tort claimants and not first party insureds. *Id.* at *3. However, *Griswold* made clear that it was bound by the decision in *Arco Industries Corp. v. American Motorist Insurance Co.*, 233 Mich. App. 143 (1998). The *Arco* court held that the Supreme Court's reasoning in *Yaldo v. North Pointe Ins. Co.,* 457 Mich. 341 (1998), specifically

15

that the "reasonably in dispute" language only applies to third party insureds, was mere dicta. *Id.*

Plaintiff argues that dismissal of this claim is premature. The *Griswold* court declared a conflict under MICH. COMP. LAWS § 7.215(J)(2) so that the inconsistency between the reasoning in *Yaldo* and the holding in *Arco*, and the plain language of the statute could be considered. As the issue is unresolved pending a determination by the Michigan Court of Appeals whether to convene a special panel under MICH. COMP. LAWS § 7.215(J)(3) to resolve the conflict, Plaintiff requests this Court to reserve its decision on this issue. As Plaintiff failed to timely file this cause of action within the contractual limitations period of the subject policy, the Court will not reserve determination on this issue for a later date. Dismissal of this action in its entirety is appropriate.

## IV. CONCLUSION

For the reasons stated above it is recommended that the Court GRANT Defendant's Motion for Summary Judgment [**Docket No. 15, filed on May 7, 2007**] and DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE.

                                                S/Denise Page Hood
                                                Denise Page Hood
                                                United States District Judge

Dated: March 31, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2008, by electronic and/or ordinary mail.

                                                  S/William F. Lewis
                                                Case Manager